IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-00257-F

| | |
|---|---|
| DINESH MAKADIA,<br>Plaintiff,<br><br>v.<br><br>CONTINENTAL WASTE<br>MANAGEMENT, LLC and UJAS PATEL,<br>Defendants. | )<br>)<br>)<br>) **ORDER**<br>)<br>)<br>)<br>) |

This matter is before the court on Defendants' motion [DE-16][1] to dismiss and Plaintiff's motion [DE-18] for partial summary judgment. For the reasons stated below, Defendants' motion to dismiss is DENIED and Plaintiff's motion for partial summary judgment is ALLOWED in part.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff brings claims against Defendant alleging (1) breach of contract, (2) conversion, and (3) violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat.§ 75-1.1 (2015).[2] Plaintiff's claims arise from Defendants' alleged failure to repay a loan in accordance with the parties' agreement.

On September 13, 2013, Defendant Ujas Patel executed a promissory note, signing individually and on behalf of Defendant Continental Waste Management, LLC ("Continental"), in favor of Plaintiff.[3] The Note, which identified Continental as "Maker" and Plaintiff as "Lender," provided that: (1) Plaintiff would lend $1 million "to Maker"; (2) Plaintiff would

---

[1] Defendant's motion [DE-12] to dismiss Plaintiff's initial complaint is DISMISSED as moot.
[2] Am. Compl. [DE-15].
[3] Pl.'s Statement Material Facts [DE-20] ¶¶ 1–2; Defs.' Mem. Opp. Summ. J. [DE-22] ¶¶ 1–2.

receive a first lien secured interest on certain real estate once it was acquired by Defendants; (3) once Plaintiff received the first lien on the contemplated real estate, the Note would be discharged as to Patel; and (4) that "the undersigned Maker" would repay the loan, with interest, no later than September 13, 2014.[4]

On October 6, 2014, Continental made a $150,000.00 payment on the Note.[5] No other payments have been made, and Plaintiff has not received a first lien secured interest in the contemplated real estate.[6]

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (second alteration in original) (citations omitted). Moreover, a court

---
[4] Promissory Note [DE-20-1] at 2–3.
[5] Pl.'s Statement Material Facts ¶ 5; Defs.' Mem. Opp. Summ. J. ¶ 9.
[6] Pl.'s Statement Material Facts ¶¶ 6, 8; Defs.' Mem. Opp. Summ. J. ¶9.

2

"need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180.

### B. Fed. R. Civ. P. 56

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The movant bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue indeed exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When making the summary judgment determination, the court views the facts and all reasonable inferences in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. "However, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the court may grant summary judgment. *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

### III. DISCUSSION

#### A. Defendants' Motion to Dismiss

Defendants move to dismiss Plaintiff's second and third claims for relief, arguing that the conversion claim is barred by the economic loss rule and the UDTPA claim fails to state sufficiently aggravating circumstances to rise to the level of an unfair or deceptive trade practice. The court addresses each claim in turn.

##### *1. Conversion*

Plaintiff alleges he agreed to loan money to Defendants for a specific purpose—the purchase of two waste management plants in Illinois. After receiving the loan, Defendants failed

3

to purchase the plants. Plaintiff argues that Defendants were not entitled to keep the loan proceeds when they did not use them as contemplated by the parties' agreement and that the unauthorized retention of the funds constitutes conversion. Defendants contend that the economic loss rule precludes recovery in tort for what is essentially a contract dispute.

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Variety Wholesalers, Inc.*, 365 N.C. at 523, 723 S.E.2d at 747 (quoting *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)) (internal quotation marks omitted). Generally, "a breach of contract does not give rise to a tort action by the promisee against the promisor." *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978). A tort action may be maintained, however, if the injury was "a conversion of the property of the promisee, which was the subject of the contract, by the promisor." *Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 783–84 (4th Cir. 2012).[7]

Plaintiff's factual allegations are sufficient to survive a motion to dismiss on this issue. Arguing that Defendants were not entitled to retain the loan proceeds after they failed to invest in the agreed-upon real estate, Plaintiff alleges, essentially, that he retained an ownership interest in the money loaned to Defendants. Thus, according to Plaintiff, the money, which was the subject

---

[7] North Carolina recognizes three additional exceptions to the economic loss rule, none of which are at issue in this case. A tort action is viable if the injury:

> (1) was an injury to the person or property of someone other than the promisee[;]
> (2) was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee[;]
> (3) was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, innkeeper or other bailee[; or]
> (4) was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor.

*Ellis*, 699 F.3d at 783–84 (alterations in original).

4

of the parties' contract, was property "of the promise." *See Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 524, 723 S.E.2d 744, 747 (2012) (holding that the parties' contract provided for the plaintiff to retain a property interest in money provided to the defendant for the sole purpose of payment to a third party). Conversion of the promisee's property that is the subject of the contract is a recognized exception to the economic loss rule, and that is exactly what Plaintiff alleges.

Defendants further argue that Plaintiff has not adequately alleged the mens rea required by the economic loss rule's conversion exception. Defendants appear to believe the word "willful" in the exception modifies both "injury" and "conversion."[8] The case law provides, however, that the exception applies to "*a* willful injury to or *a* conversion of" property. *See N.C. State Ports Auth.*, 294 N.C. at 82, 240 S.E.2d at 351 (quoted by *Beaufort Builders, Inc. v. White Plains Church Ministries, Inc.*, 783 S.E.2d 35, 40 (N.C. Ct. App. 2016); *In re New Bern Riverfront Dev., LLC*, No. 09-10340-8-JRL, 2011 WL 5902621, at *4 (Bankr. E.D.N.C. May 24, 2011); *Kelly v. Ga.-Pac. LLC*, 671 F. Supp. 2d 785, 792 n.2 (E.D.N.C. 2009)). The presence of an article, "a", before the noun "conversion" indicates that the adjective "willful" modifies only the noun "injury." Thus, willfulness is not a requirement of the conversion exception and Plaintiff need not allege facts demonstrating it.

### 2. *Unfair and Deceptive Trade Practices*

North Carolina's UDTPA prohibits "[u]nfair methods of competition in or affecting commerce." N.C. Gen. Stat. 75-1.1. The statute provides "an additional remedy apart from those less adequate remedies afforded under common law causes of action for fraud, breach of

---

[8] *See* Mem. Supp. Mot. Dismiss [DE-17] at 11 ("Additionally, while the limited exception to the economic loss rule articulated above may apply to the willful injury to or conversion of property, Plaintiff alleges only that the Defendants' alleged conversion 'was committed intentionally and in willful and wanton disregard of Plaintiff's rights[.]'" (alteration in original)).

5

contract, or breach of warranty." *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 172, 423 S.E.2d 324, 326 (1992). To state a claim under the UDTPA, a plaintiff must allege: "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) proximately causing actual injury to defendant or defendant business." *Id.* Generally, "[a] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain" such an action. *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 533, 551 S.E.2d 546, 553 (2001) (quoting *Branch Banking and Trust Co. v. Thompson,* 107 N.C.App. 53, 62, 418 S.E.2d 694, 700 (1992)). Aggravating circumstances, however, "can elevate a breach of contract into an unfair and deceptive practice if the conduct of the breaching party is deceptive." *Id.* (quoting *Poor v. Hill*, 138 N.C. App. 19, 28–29, 530 S.E.2d 838, 845 (2000)).

A practice is deceptive if it "possesse[s] the tendency or capacity to mislead, or create[s] the likelihood of deception." *Poor*, 138 N.C. App. at 28–29, 530 S.E.2d at 845 (quoting *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 453, 279 S.E.2d 1, 7 (1981) (alterations in original) (holding that a seller of real estate was sufficiently deceptive to support a claim under the UDTPA when he indicated that potential purchasers would be able to purchase three lots if they agreed to an increased purchase price, despite the seller's knowledge that one of the lots was intended to be sold to someone else). The existence of independent intentional torts, likewise, may constitute the required aggravating circumstances to elevate a claim based on breach of contract to one for unfair and deceptive practices. *See, e.g., Howard v. Carroll Companies, Inc.*, No. 1:12CV146, 2013 WL 3791619, at *15 (M.D.N.C. July 19, 2013).

Here, Plaintiff alleges both the existence of an independent intentional tort, conversion, as well as intentional deception by Defendants. According to Plaintiff, between September, 2013

6

and June, 2014, Patel repeatedly represented that the purchase of the plants had been delayed.[9] On June 20, 2014, Patel sent Plaintiff an email informing him, falsely, that "the necessary parties had 'signed all documents of Closing' for the purchase of the Plants and sent closing statements."[10] From that point, Defendants represented to Plaintiff that they had, in fact, purchased the plants as contemplated by the parties' agreement, although they had not.[11] Despite Plaintiff's repeated requests, Defendants never granted the first lien position in the real estate as they had agreed to do, and Plaintiff eventually discovered that Defendants had never purchased the plants.[12] Assuming the truth of these allegations and making all reasonable inferences in Plaintiff's favor, the court concludes the allegations are sufficient to state a claim under the UDTPA.

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment on his breach of contract claim against Defendants. Pursuant to the Note's choice of law provision, California law governs Plaintiff's breach of contract claim. Under California law, the elements of a claim for breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (Cal. Ct. App. 2010) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 395 (Cal. Ct. App. 1990)).

Here, the undisputed evidence shows that although the entire $1 million indebtedness was due and payable no later than September 13, 2014, Defendants have made only a single payment

---

[9] Am. Compl. ¶ 25–26.
[10] *Id.* ¶ 27.
[11] *Id.* ¶¶ 28–29.
[12] *Id.* ¶¶ 30–31.

7

of $150,000.00.[13] The parties agree that Continental is liable under the Note, and Defendants do not dispute that summary judgment is warranted on this issue as to that defendant. Defendants argue, however, that material issues of fact exist as to whether Patel is personally liable.[14]

Under California law, "the intention of the parties as expressed in the contract is the source of contractual rights and duties. A court must ascertain and give effect to this intention by determining what the parties meant by the words they used." *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1193 (E.D. Cal. 2009), aff'd, 409 F. App'x 88 (9th Cir. 2010) (quoting *Pac. Gas and Elec., Co. v. G.W. Thomas Drayage & Rigging Co., Inc.*, 442 P.2d 641, 644 (Cal. 1968)). Where the parties to a contract disagree as to its meaning, the court follows a two-step process to construe the contract. *Id.* First, the court determines whether the contract is ambiguous. "If the language of the contract cannot reasonably be construed as a party suggests then the [c]ourt will find that the contract is not ambiguous and the inquiry is over." *Id.* If, however, the court determines that the contract is "reasonably susceptible to either of the meanings urged by the parties" then the court proceeds to the next step. *Id.* Second, the court considers any extrinsic evidence proffered by the parties. *Id.* "If the parties submit no extrinsic evidence, or if the material extrinsic evidence is not in conflict, the [c]ourt's construction of the contract is purely a question of law. If, however, the evidence presents a genuine issue of material fact, that fact issue must be resolved by a jury before the [c]ourt can interpret the contract." *Id.*

Here, although he signed the Note individually, as well as on behalf of Continental, Patel states that he did not intend to become personally liable.[15] Defendants point out that the text of

---

[13] Pl.'s SUMF ¶¶ 3, 4, 8; Def.'s Mem. Opp. Summ. J. at 1–2, ¶¶ 2, 9.
[14] Defendants further observe that the Note's interest rate is usurious. Because the court finds that material fact issues exist at to Patel's liability, making summary judgment inappropriate, it need not consider the impact of the Note's usurious interest rate at this time.
[15] Patel Decl. [DE-22-1] ¶ 6.

8

the Note identifies only Continental as "Maker" and obligates only the Maker to repay the loan.[16] Accordingly, Defendants argue, the meaning of Patel's signature as individual is "ambiguous at best."[17]

Plaintiff, on the other hand, points to the Note's provision that Patel's liability would be discharged once Plaintiff received a first lien secured interest in the contemplated real estate.[18] According to Plaintiff, this provision proves Patel's personal liability, as it would make little sense to provide for the discharge of a liability that had not been incurred. This argument would be persuasive, were it not for the Note's requirement that "the undersigned"—as opposed to the Maker—pay all costs of collection in the event of a default. Given this, together with Patel's contention that he "intended only for Continental to be obligated to repay any principal and interest,"[19] the court finds it at least possible that the Note was intended to impose differing obligations on the Defendants. Thus, a material fact issue exists regarding the parties' intent as to Patel's personal liability.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion [DE-12] to dismiss the initial complaint is DISMISSED as moot. Defendants' motion [DE-16] to dismiss the amended complaint is DENIED. Plaintiff's motion [DE-18] for partial summary judgment is ALLOWED as to Defendant Continental Waste Management, LLC and DENIED as to Defendant Ujas Patel.

---

[16] Promissory Note [DE-15-1] at 2 ("[T]he undersigned []Maker promises to pay to the order of Lender the principal sum ONE MILLION US DOLLAR AND NO/100 ($1,000,000.00) together with interest thereon, from the date hereof, at the rate of FIFTEEN PERCENT (15%) per annum, in lawful money of the United States of America, which shall at the time of payment be legal tender in payment of all debts and dues, public and private.").
[17] Def.'s Mem. Opp. Summ. J. at 4.
[18] Promissory Note at 2–3.
[19] Patel Decl. ¶ 6.

9

SO ORDERED.

This, the _7_ day of November, 2016.

                                           _James C Fox_
                                           JAMES C. FOX
                                           Senior United States District Judge

10

Case 5:16-cv-00257-F   Document 24   Filed 11/07/16   Page 10 of 10